**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MOZELL PAUL GOUDEAU,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-13-241-M** |
| | ) | |
| **JOE M. ALLBAUGH,** | ) | |
| **Interim Director,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Mozell Paul Goudeau, a state prisoner appearing pro se, has filed a

Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1), challenging the

constitutionality of his criminal conviction by the State of Oklahoma. Respondent filed a

Response to Petition for Writ of Habeas Corpus (Doc. No. 15). United States District

Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge

for initial proceedings in accordance with 28 U.S.C. § 636(b). As set forth below, the

undersigned recommends that the Petition be denied.

## I.    Relevant Case History and Issues Presented

On March 13, 2009, police officers for the city of Chickasha, Oklahoma,

responding to a dispatch call, found Petitioner seated in a vehicle parked at a local motel.

---

[1] Because Petitioner is incarcerated at a privately operated correctional facility, the
current Interim Director of the Oklahoma Department of Corrections ("ODOC"), Joe M.
Allbaugh, is hereby substituted as the sole Respondent in this proceeding. *See* R. 2(a),
12, R. Governing § 2254 Cases in U.S. Dist. Cts.; Fed. R. Civ. P. 25(d), 81(a)(4);
*Director's Office*, ODOC, http://www.ok.gov/doc/About_Us/Director's_Office (last
visited Jan. 22, 2016).

Trial Tr. 146, 148, 161, 164, 167, 168 (*State v. Goudeau*, No. CF-2009-99 (Grady Cnty. Dist. Ct. Oct. 18-19, 2010)) (Doc. No. 17) (conventionally filed). During a search of the car, a glass pipe containing burnt residue was found in a towel between the two front seats. Petitioner was arrested at the scene. Trial Tr. 153-56, 169-71, 176-77.

After a jury trial in state district court, Petitioner on October 19, 2010, was convicted of: Count 1, felony possession of a controlled dangerous substance after two or more prior felony convictions, in violation of Title 63, Section 2-402(A)(1) of the Oklahoma Statutes; and Count 2, misdemeanor unlawful possession of drug paraphernalia, in violation of Title 63, Section 2-405 of the Oklahoma Statutes. Trial Tr. 137, 218-19, 242; OCCA Summ. Op. (Doc. No. 15-3) at 1.[2] On December 7, 2010, Petitioner was sentenced to life imprisonment on the felony count and one year imprisonment on the misdemeanor count, in accordance with the jury's recommendation. Sent'g Tr. 244, 246-48 (Dec. 7, 2010) (Doc. No. 17).

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). *See Goudeau v. State*, No. F-2010-1182 (Okla. Crim. App. filed Dec. 16, 2010).[3] The OCCA affirmed Petitioner's conviction and sentence on March 12, 2012. OCCA Summ. Op. at 4.

---

[2] Citations to filings in this Court use the page numbers assigned by the Court's electronic filing system.

[3] The dockets for *State v. Goudeau*, No. CF-2009-99, District Court of Grady County (filed Mar. 16, 2009), and *Goudeau v. State*, No. F-2010-1182, Oklahoma Court of Criminal Appeals (filed Dec. 16, 2010), are publicly available through http://www.oscn.net.

Petitioner then filed this federal habeas action, in which he raises five grounds for relief. *See* Pet. (Doc. No. 1) at 3-40.[4] Respondent concedes that Petitioner's claims are timely and that Petitioner has exhausted his state-court remedies with respect to the grounds raised in the Petition. *See* Resp't's Resp. (Doc. No. 15) at 2; 28 U.S.C. §§ 2244(d), 2254(b)(1)(A).

## II.    The Standard of Review

The Tenth Circuit has summarized the standard of review for evaluating state-court determinations that have been challenged in federal court through a 28 U.S.C. § 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different

---

[4] "Ground Four" of the Petition consists of two separate legal claims and is more properly construed as raising two separate propositions for relief. *See* Pet. at 31-40.

from an incorrect application of federal law. Indeed, a federal habeas court
may not issue the writ simply because that court concludes in its
independent judgment that the relevant state-court decision applied clearly
established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal

quotation marks omitted).

Thus, to succeed on a habeas petition under 28 U.S.C. § 2254(d)(1), "a state

prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Harrington v. Richter*, 562 U.S. 86, 103 (2011). Under § 2254(d)(2), the relevant

question "is not whether a federal court believes the state court's determination was

incorrect but whether that determination was unreasonable—a substantially higher

threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Factual findings made by a

state trial or appellate court are presumptively correct, and this presumption may be

rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see*

*Landrigan*, 550 U.S. at 473.

## III.    Analysis

As grounds for each of his federal claims, Petitioner restates and incorporates the

propositions of error raised in his brief on direct appeal (Pet'r's OCCA Br. (Doc. No. 15-

1) at 10-42). *See* Pet. at 2-40. The undersigned has considered this brief together with

the Petition and has liberally construed all of Petitioner's pro se filings as part of a careful

review of "the facts and the pleadings" in order "to ascertain what occurred in prior state

proceedings and the true nature of Petitioner's claims" and to ensure "substantial justice." *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

**A. Ground One: Violation of Equal Protection and *Batson v. Kentucky***

In Ground One, Petitioner claims that the State used a peremptory challenge to exclude a potential juror on the basis of race, in violation of Petitioner's equal protection rights as determined by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986). *See* Pet. at 3-13 (citing U.S. Const. amend. XIV).

As the Tenth Circuit has explained:

> The Constitution forbids a prosecutor from exercising a peremptory challenge to a prospective juror on account of the juror's race. When defense counsel believes that the prosecutor has violated *Batson*, a three-step review process is in order. Once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. At the second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. But if, at step three, the court finds the proffered ground to be pretextual, it may determine that the strike was purposeful discrimination.

*Black v. Workman*, 682 F.3d 880, 894 (10th Cir. 2012) (alterations, citations, and internal quotation marks omitted); *accord Rice v. Collins*, 546 U.S. 333, 338 (2006). "The party objecting to the use of peremptory strikes . . . carries the ultimate burden of persuasion." *Saiz v. Ortiz*, 392 F.3d 1166, 1171 (10th Cir. 2004) (internal quotation marks omitted).

Pursuant to AEDPA and Tenth Circuit authority, Petitioner is entitled to relief on his *Batson* claim only if the state court's determination was "'an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2)." *Black*, 682 F.3d at 896 (quoting *Collins*, 546 U.S. at 338); *see also Saiz*, 392 F.3d at 1175. "Thus, a federal habeas court can only grant [Petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Collins*, 546 U.S. at 338-39 (quoting 28 U.S.C. § 2254(e)(1)); *accord Black*, 682 F.3d at 896.

### 1. The State's Challenge to Panelist M.

At the close of voir dire proceedings, the State exercised a peremptory challenge, its second, to excuse "Panelist M."[5] Trial Tr. 119. This exchange followed:

> [DEFENSE COUNSEL]: At this time the defense would like to use a Batson challenge considering she was the only African-American on that jury panel.
>
> [PROSECUTOR]: Your Honor, she indicated that she had friends or family members battling drug addiction. She also indicated she has political – that she was contacted by someone and asked to put a sign in her yard. It just makes us uneasy right now because of political tensions, and I'm worried about the drug history in her family. She said she had three or four nephews and aunts and uncles that were battling drug addiction.
>
> [THE COURT]: [Defense counsel], anything further on that issue as far as Batson?
>
> [DEFENSE COUNSEL]: No, Judge. She did advise the Court that she could be a fair and impartial juror.
>
> [THE COURT]: I will overrule the motion, and go ahead and we'll excuse [Panelist M.]

---

[5] Although the potential juror is identified by name in the parties' filings, the undersigned refers to her only by the initial "M."

Trial Tr. 120; *see also* Trial Tr. 80, 90-91, 100, 112.

### 2. *Fourteenth Amendment Analysis*

When the State exercised its peremptory strike against Panelist M., the trial court directed the State to explain its rationale for the peremptory strike, and the prosecutor offered an explanation. *See* Trial Tr. 120. Accordingly, the undersigned assumes that the trial court found a prima facie case of racial discrimination at step one of the *Batson* inquiry. *See Saiz*, 392 F.3d at 1178-79. Petitioner asserts that the prosecutor's stated reasons for exercising the peremptory challenge were not race-neutral, but merely a pretext for a discriminatory strike. *See* Pet. at 6-11. The record, however, supports an objectively reasonable finding that the proffered reasons were race-neutral and not pretextual.

During voir dire, Panelist M. stated, in response to a question, that she had family members who battled an addiction to drugs or alcohol. Trial Tr. at 79-80. Panelist M. answered that she had a "[b]rother and some nieces and nephews" and that their addiction had affected her family "a lot." Trial Tr. 80. Panelist M. indicated that the addiction was to drugs rather than alcohol, stating, "I don't do drugs and I don't agree with them." Trial Tr. 80. Later, during questioning focused upon the panelists' potential involvement with the local District Attorney election, Panelist M. also reported, "They called and asked to put a sign in my yard." Trial. Tr. 90.

Relevant to step two of the *Batson* inquiry, Petitioner appears to concede that the prosecutor's reliance upon these statements by Panelist M. was facially valid—i.e., that

this rationale is "a race-neutral explanation" for exercising the peremptory strike. *See* Pet. at 9, 10; *Black*, 682 F.3d at 894. The second step of the *Batson* inquiry "'does not demand an explanation that is persuasive, or even plausible.'" *Saiz*, 392 F.3d at 1179 (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "Rather, 'the issue is the facial validity of the prosecutor's explanation,' so 'unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Id.* (alteration omitted) (quoting *Elem*, 514 U.S. at 768). The prosecutor's cited reasons are "based on something other than the race of the juror": the drug addiction associated with Panelist M.'s family members and the request for Panelist M. to demonstrate support, through a campaign sign, for the election of a local prosecutor. The reasons cited by the State are facially valid, reflect no inherent discriminatory intent, and support the trial court's implicit findings to that effect. *See* Trial Tr. 120. Petitioner has failed to show the trial court's findings at step two were unreasonable or to rebut those findings by clear and convincing evidence. *See Collins*, 546 U.S. at 338-39; *Black*, 682 F.3d at 896; 28 U.S.C. § 2254(d)(2), (e)(1).

Regarding step three, Petitioner argues that the prosecutor's explanation was a pretext by noting that Panelist M. indicated that she believed she could be impartial despite her family's drug addiction issues and despite the request to place a campaign sign in her yard. *See* Pet. at 7; Trial Tr. at 80, 90-91. In *United States v. Exom*, 565 F. App'x 699 (10th Cir. 2014), however, the Tenth Circuit rejected the proposition that a potential juror's proclaimed impartiality itself alleviates legitimate concerns regarding that person's ability to serve on a jury in a criminal trial:

> Regardless of race, a juror's admission that a family member was convicted of a crime similar to the one being adjudicated could cause legitimate concern. The juror in question might have difficult[]y not being influenced by his son's conviction when considering [the defendant's] guilt or innocence. And that possibility is not altogether eliminated by an assurance of impartiality from the juror.

*Exom*, 565 F. App'x at 702 (upholding the district court's rejection of a *Batson* claim where the prosecution dismissed the only black member of the venire panel); *see also* Pet. at 6 (conceding that the prosecution's concern about Panelist M.'s family's drug history and political tensions "is understandable").

Petitioner argues that the proffered reasons for striking Panelist M. are pretextual because the prosecutor failed to exercise peremptory strikes as to other panelists who mentioned issues related to drugs and failed to adequately investigate the political-sign issue in voir dire. *See* Pet. at 7-11. While any use of peremptory strikes "directed at *other* African American veniremembers" is "a relevant factor to be considered in completing the third step of the *Batson* inquiry," defense counsel's challenge reflects that neither of the prosecutor's two additional peremptory strikes was raised against an African-American. *United States v. Nelson*, 450 F.3d 1201, 1209 (10th Cir. 2006) (citing *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005)); *see* Trial Tr. 120 (defense counsel stating that Panelist M. is "the only African-American" on the panel); Trial Tr. 119-22 (prosecutor exercising two other peremptory strikes and waiving two more). Relatedly, although Petitioner points to other panelists who raised drug issues but were not stricken by the State, Petitioner fails to identify any "otherwise-similar" panelist who raised *both* drug and political issues but was not stricken. *See* Pet. at 7-9; *Nelson*, 450 F.3d at 1209

(discussing "another relevant factor discussed in *Miller-El*, namely the side-by-side comparison between black and white veniremembers to determine whether a 'prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack' panelist" who was permitted to serve (quoting *Miller-El*, 545 U.S. at 241)). Petitioner therefore fails to provide a relevant point of comparison and does not show that the prosecutor's justifications are pretextual, such that "the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications." *Collins*, 546 U.S. at 341; *see Saiz*, 392 F.3d at 1180 ("The trial court's implicit finding that the prosecution had offered credible race[]-neutral explanations for its use of peremptory strikes . . . has not been rebutted by clear and convincing evidence."); 28 U.S.C. § 2254(e)(1).

On direct appeal, the OCCA denied relief on Petitioner's *Batson* claim, stating:

> The trial court's ruling on a *Batson* challenge is entitled to great deference, and we review the record in the light most favorable to the trial court's ruling. The court's "decision on the issue of discriminatory intent will not be overturned unless we are convinced that determination is clearly erroneous." *Short v. State*, 1999 OK CR 15, ¶ 17, 980 P.2d 1081, 1092 (citing *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871-1872, 114 L.Ed.2d 395 (1991)). [Petitioner] has not shown that the trial court clearly erred in overruling his *Batson* objection.

OCCA Summ. Op. at 2 (citation and emphasis omitted). For the reasons set forth above, the OCCA's conclusion that the trial court properly overruled Petitioner's *Batson* objection and properly accepted the prosecution's race-neutral reasons for exercising a peremptory strike against Panelist M. was not an unreasonable determination of the facts in this case. Further, the OCCA's conclusion that Petitioner's equal protection rights

under *Batson* were not violated is not contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1), (2). Habeas relief on Ground One should be denied.

### B. Ground Two: Sufficiency of the Evidence

Petitioner asserts in Ground Two that the evidence admitted at trial was insufficient for a jury to have found beyond a reasonable doubt that he committed the felony crime in Count 1 of possession of a controlled dangerous substance (methamphetamine). *See* Pet. at 13-22.

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), establishes "the minimum amount of evidence that the [Fourteenth Amendment's] Due Process Clause requires to prove the offense" of conviction: a reviewing court may set aside a guilty verdict on direct appeal only if, after viewing all of the evidence in the light most favorable to the government, it determines that "no rational trier of fact" could find the essential elements of the crime beyond a reasonable doubt. *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012); *McDaniel v. Brown*, 558 U.S. 120, 121 (2010). Thus, in reviewing a habeas challenge based on the sufficiency of the evidence, a federal court "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). "[A] federal habeas court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132

S. Ct. 2, 4 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (discussing the "twice-deferential standard" that a federal habeas court must apply to *Jackson* claims that a state court has rejected on the merits).

A sufficiency of the evidence inquiry begins with the substantive elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 309, 324 n.16. As relevant to this case, the elements of Unlawful Possession of Controlled Dangerous Substance are: (1) knowing and intentional; (2) possession; (3) of the controlled dangerous substance of methamphetamine. Okla. Unif. Crim. Jury Instruction No. 6-6 (2d ed. 1996 & Supps.); Okla. Stat. tit. 63, § 2-402(A)(1); Trial Tr. 200, 209. Petitioner specifically contends that he did not knowingly possess the residual amount of methamphetamine found in the bowl of the glass pipe in the parked car because (i) the OCCA should overturn its prior precedent holding that no minimum quantity of a controlled dangerous substance is required to support a conviction for possession of drugs, and (ii) Petitioner could not knowingly possess residue in a pipe based upon having used the pipe at some point in the past. *See* Pet. at 13-22.

The OCCA rejected both of these arguments on appeal, stating:

> We review the evidence in the light most favorable to the State, accepting the verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. The evidence in this case is legally sufficient to establish knowing possession of methamphetamine. *Head v. State*, 2006 OK CR 44, ¶ 7, 146 P.3d 1141, 1144. Proposition Two is denied.

OCCA Summ. Op. at 2-3. Because the OCCA applied a standard analogous to that of *Jackson v. Virginia*,[6] this Court's task "is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable" or was contrary to the Supreme Court's holding in that case. *See Matthews*, 577 F.3d at 1183; 28 U.S.C. § 2254(d)(1); *see also Jackson*, 443 U.S. at 319; *Turrentine v. Mullin*, 390 F.3d 1181, 1203 (10th Cir. 2004). To the extent Petitioner's challenge presents a question of fact, the Court's review is also governed by 28 U.S.C. § 2254(d)(2), and the Court "ask[s] whether the facts are correct" in determining whether the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented." *Hooks v. Workman*, 689 F.3d 1148, 1165 (10th Cir. 2012) (internal quotation marks omitted); *see also id.* at 1166 (noting that when a sufficiency challenge is resolved on the merits by the state courts the federal habeas standard of review is "'deference squared'").

The statute under which Petitioner was convicted does not specify a minimum amount of a controlled dangerous substance that an individual must possess to be found guilty of possession. *See* Okla. Stat. tit. 63, § 2-402(A). As conceded by Petitioner, *see* Pet. at 14-16, the OCCA has consistently held that "the quantity of the drug possessed is not material in a prosecution for controlled dangerous substance possession because the relevant statute does not prescribe any minimum amount that must be possessed." *Head*,

_____

[6] The OCCA's application of the *Jackson* standard is reflected in its citation to and analysis of Petitioner's sufficiency-of-the-evidence argument under *Spuehler*. In *Spuehler*, the OCCA cited and applied *Jackson*. *See Spuehler*, 709 P.2d at 203-04. Moreover, "[t]hat the OCCA did not cite *Jackson* is of no moment; state courts need not refer to, or even be aware of, controlling Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Matthews v. Workman*, 577 F.3d 1175, 1183 n.2 (10th Cir. 2009) (internal quotation marks omitted).

146 P.3d at 1144 (rejecting criminal defendant's claim that an "immeasurable" quantity of "charred residue" of crack cocaine in a pipe was insufficient to support a possession conviction (citing *Spriggs v. State*, 511 P.2d 1139 (Okla. Crim. App. 1973))); *see also* Okla. Unif. Crim. Jury Instruction No. 6-6 cmt. ("Possession of any quantity of contraband is sufficient to invoke the statutory prohibitions, regardless of whether the quantity was usable or capable of producing hallucinogenic effects.").

Further, as indicated by the OCCA, there was ample evidence to establish Petitioner's knowing possession of the methamphetamine contained in the residue of the glass pipe. Police officer Traye Alexander testified that after arriving to find Petitioner seated in the parked car, Petitioner gave permission for the car to be searched. Trial Tr. 151-53, 169. Inside the car, Officer Alexander found a towel between the two front seats. Trial Tr. 154-55, 169-70. The towel contained a glass pipe with a bulbous head that contained a burnt portion and white residue. Trial Tr. 155, 162, 169-70, 171. According to Officer Alexander, Petitioner "advised that [the pipe] was his" and that "he forgot it was in the vehicle, that he had used it approximately a week prior to smoke narcotics." Trial Tr. 156. Carrie Perkins, a criminalist with the Oklahoma State Bureau of Investigation, testified that she tested the residue in the glass pipe and conclusively identified the residue as methamphetamine. Trial Tr. 188, 190-92, 198; *see* State's Exs. 1, 2 (Doc. No. 17).

Under Oklahoma law, "knowing" means "[b]eing aware of the existence of facts that cause the act or omission to be criminal in nature," and "possession" means "[a]ctual physical custody, or knowledge of the substance's presence, as well as power and intent

14

to control its use or disposition." Okla. Unif. Crim. Jury Instruction No. 6-16 (citing

Okla. Stat. tit. 21, § 96; *Staples v. State*, 528 P.2d 1131 (Okla. Crim. App. 1974)); *see*

*also* Trial Tr. 206. A "controlled dangerous substance" is "a drug, substance or

immediate precursor" listed in Oklahoma's Uniform Controlled Dangerous Substances

Act, 63 Okla. Stat. §§ 2-201 to 2-805, which includes methamphetamine. Okla. Stat. tit.

63, § 2-101(8); *see id.* § 2-206(C)(1); Trial Tr. 137. A jury reasonably could find all of

these aspects of the relevant offense proven beyond a reasonable doubt based upon the

testimony and other evidence presented in this case. *See Head*, 146 P.3d at 1144

(upholding possession conviction where drug residue was recovered and defendant

admitted to police officer that he was smoking crack).

At its core, Petitioner's argument is a disagreement with the OCCA's

interpretation of the lack of a minimum quantity requirement in the Oklahoma statute. In

a federal habeas challenge, however, "[s]tate law determines the parameters of the

offense and its elements and a federal court may not reinterpret state law." *Tillman v.*

*Cook*, 215 F.3d 1116, 1131-32 (10th Cir. 2006) (internal quotation marks omitted). A

habeas petitioner may not "challenge a state court's interpretation of state law by

recasting his arguments as challenges to a state court's application of *Jackson*." *See*

*Anderson-Bey v. Zavaras*, 641 F.3d 445, 451 (10th Cir. 2011) (alteration and internal

quotation marks omitted). Petitioner's suggestion that the OCCA should reexamine its

precedent in light of a 1977 Wisconsin Supreme Court case does not demonstrate that the

OCCA's application of *Jackson* was unreasonable. *See* Pet. at 16-21; *cf. Titsworth v.*

*Mullin*, 415 F. App'x 28, 33 (10th Cir. 2011) (dismissing habeas claim when trace

amount of cocaine was sufficient to conclusively identify the substance); *Lovelace v. Howard*, 402 F. App'x 360, 362 (10th Cir. 2010) (dismissing habeas claim of insufficiency of the evidence where petitioner had a syringe in his pocket and evidence that the syringe contained methamphetamine was presented to the jury). Here, Petitioner does not dispute the "historical facts," and the OCCA's affirmance of Petitioner's conviction "amounted to a resolution of the state-law issue of what is essential to establish an element of the offense." *Anderson-Bey*, 641 F.3d at 451 (alteration and internal quotation marks omitted). "Even if we believe that the state courts misinterpreted state law in upholding a defendant's convictions, 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Id.* at 448 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

Considering the evidence discussed above, a rational trier of fact could find beyond a reasonable doubt that Petitioner knowingly and intentionally possessed the controlled dangerous substance of methamphetamine. Therefore, the OCCA's rejection of Petitioner's challenge to the sufficiency of the evidence was not contrary to or an unreasonable application of the governing *Jackson* standard and was not based upon an unreasonable determination of the facts. *See* OCCA Summ. Op. at 2-3; 28 U.S.C. § 2254(d)(1), (2); *Jackson*, 443 U.S. at 319. Petitioner is not entitled to habeas relief on Ground Two.

### C. Ground Three: Admission of Evidence of Prior Conviction

Petitioner next argues that the trial court improperly allowed admission of "unauthorized" and prejudicial evidence during the penalty phase of his trial. *See* Pet. at

22-30.  During this second stage, the State introduced, through the testimony of Officer Alexander and over the objection of defense counsel, an Order Revoking Suspended Sentence issued against Petitioner in a prior Oklahoma felony case (State's Exhibit 20). *See* Trial Tr. 226, 227-31; State's Ex. 20 (Order Revoking Suspended Sentence, *State v. Goudeau*, No. CF-2003-30 (Greer Cnty. Dist. Ct. Sept. 26, 2007)).  The trial court admitted the Exhibit and denied the request for its redaction by defense counsel.  Trial Tr. 230-31.

Petitioner objects that this Exhibit contained improper information unrelated to the fact of the underlying felony conviction for assault and battery upon an ODOC employee—specifically, written findings by the district court that Petitioner had violated rules of his probation regarding drug possession and use and that Petitioner had failed to complete substance abuse treatment, all prior to March 2009, when he was arrested in the instant criminal matter.  *See* Pet. at 25-30; State's Ex. 20 at 1.  The OCCA agreed with Petitioner that the unredacted State's Exhibit 20 was improperly admitted under Oklahoma law but denied relief:

> [W]e agree with [Petitioner] that the district court abused its discretion in the admission of the un-redacted copy of State's Exhibit 20, an order revoking [Petitioner's] probation on a felony conviction entered by the District Court of Greer County.  The portion of this court order setting forth the district court's findings that [Petitioner] violated his probation by using drugs and failing drug rehab was irrelevant to the State's proof of the prior conviction.  *Carter v. State*, 1987 OK CR 248, ¶¶ 20-24, 746 P.2d 193, 197-98.  However, considering the properly admitted evidence of [Petitioner's] prior convictions was far more prejudicial, we find the trial court's erroneous admission of this un-redacted order was harmless error.  *Id.*  Proposition Three requires no relief.

OCCA Summ. Op. at 3.

At the second stage of the trial, the burden was upon the State to prove that Petitioner was the same person who had been convicted of two or more prior felonies for purposes of enhancement of Petitioner's felony sentence in Count 1. *See Cooper v. State*, 810 P.2d 1303, 1306 (Okla. Crim. App. 1991); Okla. Stat. tit. 21, § 51.1(C). Under Oklahoma law, it also was incumbent upon the State to supply "other facts and circumstances," beyond merely "identity of name," "for the jury to consider in reaching their verdict." *Cooper*, 810 P.2d at 1306. "[M]ore than a bare judgment and sentence may be required to prove the existence of prior felony convictions." *Smith v. State*, 863 P.2d 465, 467 (Okla. Crim. App. 1993). It can be error under Oklahoma law, however, for the prosecutor to introduce "extraneous" details, such as the charging documents, pertaining to the prior convictions. *See Carter*, 746 P.2d at 197; *Baker v. State*, 432 P.2d 935, 936, 938 (Okla. Crim. App. 1967).

Petitioner's claim, both in the state courts and here, is based entirely upon an alleged violation of state evidentiary law, not of the Constitution or other federal law. *See* Pet. at 22-30; Pet'r's OCCA Br. at 27-34. Likewise, the OCCA's decision rested solely on state law. *See* OCCA Summ. Op. at 3. Title 28, Section 2254(a) of the United States Code "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Wilson v. Corcoran*, 562 U.S. 1, 4 (2010) (internal quotation marks omitted). Petitioner's argument that the OCCA misapplied *Carter* and Oklahoma evidentiary law in denying relief on Petitioner's claim does not support the grant of habeas relief: a federal district court must accept the state

court's interpretation of its own authority. *See id.* ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *McGuire*, 502 U.S. at 67-68.

Further, Petitioner has not shown that the OCCA's harmless-error determination was contrary to or an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). The OCCA has explained that it holds a nonconstitutional error—i.e., an error of purely state law—to be harmless on direct review unless the error "had a 'substantial influence' on the outcome, or leaves the reviewing court in 'grave doubt' as to whether it had such an effect." *Simpson v. State*, 876 P.2d 690, 702 (Okla. Crim. App. 1994) (citing *Kotteakos v. United States*, 328 U.S. 750, 765 (1946), as the federal standard for showing error "in non-constitutional situations"); *accord O'Neal v. McAninch*, 513 U.S. 432, 437-38 (1995) (noting that the *Kotteakos* standard is applied in direct review of nonconstitutional trial error); *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (same). The OCCA found the admission of State's Exhibit 20 to be harmless because the other, properly admitted evidence of Petitioner's prior convictions "was far more prejudicial." OCCA Summ. Op. at 3. This "properly admitted evidence" reflected Petitioner's prior convictions for both first-degree burglary and kidnapping. *See* State's Exs. 18, 19b; Trial Tr. 220-21, 222-23, 225-26, 231, 232. The jury needed only to find that Petitioner had two, not three, prior convictions to recommend an enhanced sentence on Count 1. *See* Okla. Stat. tit. 21, § 51.1(C); Trial Tr. 242. Petitioner has not shown that the OCCA's harmless-error decision "conflict[s] with the reasoning or the holdings" of Supreme Court precedent or that the OCCA "applied

harmless-error review in an 'objectively unreasonable' manner," such that its decision may be set aside on habeas review. *Mitchell v. Esparza*, 540 U.S. 12, 15-19 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); 28 U.S.C. § 2254(d)(1).

Finally, even assuming Petitioner is raising a federal claim, the Court's review of the OCCA's determination is limited to asking whether the admission of State's Exhibit 20 was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration and internal quotation marks omitted); *accord Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). As noted above, evidence of two other prior felonies was properly admitted, and Petitioner's sentence was within the statutory range based upon his "having been twice convicted of felony offenses." *See* State's Exs. 18, 19b; Okla. Stat. tit. 21, § 51.1(C). Petitioner therefore cannot demonstrate that his sentencing was rendered fundamentally unfair by the admission of the Order Revoking Suspended Sentence. *See Revilla*, 283 F.3d at 1212; *Battle v. Sirmons*, 304 F. App'x 688, 691 (10th Cir. 2008) ("[W]e find the failure to redact sentencing information from the list of prior convictions placed before the jury to fall short of implicating fundamental trial fairness."); *accord Goudeau v. Dowling*, No. CIV-13-240-M, 2014 WL 5306718, at *1, *9-10 (W.D. Okla. Oct. 15, 2014), *appeal dismissed*, 601 F. App'x 703, 707-08 (10th Cir. 2015) ("While evidence of this suspended sentence was improperly admitted at sentencing, evidence of two other felonies was unquestionably properly admitted. As Goudeau's sentencing range was

based on 'two or more felonies,' it is impossible for him to claim the improper admission of this third felony rendered his sentencing fundamentally unfair.").

**D. Ground Four: Sentencing on Misdemeanor Charge**

In Petitioner's bifurcated trial, liability on both the felony drug-possession offense and the misdemeanor paraphernalia offense was determined at the first stage, and punishment upon both offenses was determined in the second stage. *See* Trial Tr. 218, 234, 242. Petitioner did not object to this approach at trial but has since argued that both his liability and punishment upon the misdemeanor offense should have been determined in the first stage, before the jury heard evidence of the prior felony convictions introduced for enhancement purposes on his felony offense. *See* Pet'r's OCCA Br. at 35-38; Pet. at 31-35, 40. According to Petitioner, the jury's exposure to prior-felony evidence was improper and, coupled with a failure to instruct the jury "that they could not use prior convictions history for purposes of maximizing punishment on" the misdemeanor offense, prejudiced him in their sentencing decision on that misdemeanor offense. Pet. at 32-35. Petitioner therefore requested that the OCCA modify his one-year sentence on the misdemeanor offense to run concurrently with, rather than consecutively to, his life sentence on the felony offense. *See* Pet. at 34-35.

The OCCA denied relief on this claim:

> [Petitioner] claims in Proposition Four that the trial court erred when it submitted the question of punishment on the misdemeanor count during the sentencing ph[]ase of trial. [Petitioner] waived any errors in the bifurcation procedure and punishment instructions when he failed to object at trial, limiting our review to plain error. Plain errors are those errors "which go to the foundation of the case, or which take from a defendant a

21

right which was essential to his defense." *Simpson*[, 876 P.2d at 695]. [Petitioner] has not shown plain error. This proposition is without merit.

OCCA Summ. Op. at 3 (citation omitted).

To the extent Petitioner argues that the OCCA incorrectly interpreted and applied state sentencing law in denying his request to modify his sentence, his claim alleges only an error of state law and therefore cannot support the grant of federal habeas relief. *See* Pet'r's OCCA Br. at 35-38; Pet. at 31-35, 40; *McGuire*, 502 U.S. at 68. Even liberally construing Petitioner's Ground Four to encompass a due process constitutional claim, Petitioner can obtain no relief unless the trial court's bifurcation and failure to sua sponte issue an instruction regarding the prior-conviction evidence "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995); *see also Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (noting that the OCCA's application of plain-error review was an adjudication on the merits to which deference was owed under § 2254(d)). The pertinent question as to the trial court's failure to instruct is whether the lack of instruction "so infected the trial" that the result violates due process. *Maes*, 46 F.3d at 984 (discussing state trial court's failure to instruct jury on a specific theory of self-defense); *see also Turrentine*, 390 F.3d at 1200-01 (discussing state trial court's failure to instruct "jury on how it could use the victim impact statement in its sentencing decision"). "'An omission . . . is less likely to be prejudicial than a misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). "The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial." *Id.*

Petitioner has not shown that the trial court's structuring of the proceedings and failure to sua sponte and specially instruct the jury resulted in a fundamentally unfair trial. There is no federal constitutional right to a bifurcated trial. *Spencer v. Texas*, 385 U.S. 554, 568 (1967). The verdict form used by the jury expressly connected the prior felony convictions only to the felony offense and not to the misdemeanor charge, in accordance with state statute. *See* Trial Tr. 242; Okla. Stat. tit. 21, § 51.1(C). The jury's recommended one-year sentence on the misdemeanor offense was within the allowable statutory range. *See* Trial Tr. 242; Okla. Stat. tit. 63, § 2-405(E)(1)-(3). And although Petitioner sought to have his sentences run concurrently, separate sentences run consecutively under Oklahoma law unless the trial court orders otherwise. *See* Sent'g Tr. 248; Okla. Stat. tit. 21, § 61.1.

For all of these reasons, the trial court's bifurcation and failure to sua sponte instruct the jury as to the limited purposes for which the prior felony convictions may be considered did not render the trial "so fundamentally unfair as to cause a denial of a fair trial." *Maes*, 46 F.3d at 984; *see also Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) ("Generally, our review of a sentence [on federal habeas] ends once we determine the sentence is within the limitation set by statute."). The OCCA's decision in this regard was not contrary to or an unreasonable application of clearly established federal law. *See* OCCA Summ. Op. at 3; 28 U.S.C. § 2254(d)(1), (2). Petitioner is not entitled to habeas relief on Ground Four.

### E. Ground Five: Excessive Sentence

In his final claim for relief, Petitioner cites the alleged trial errors discussed above and argues that in light of these errors, the imposition of a life sentence on the felony offense and a consecutive one-year sentence on the misdemeanor offense is excessive. Pet. at 31, 36-40. The OCCA disagreed, stating:

> The evidence before the jury tends to show that [Petitioner] was an active drug user and an offender with prior violent convictions. The sentence is within the range of the applicable statute and does not shock the conscience. *Rea v. State*, 2001 OK CR 28, ¶ 5, 34 P.3d 148, 149 ("shock the conscience" is appropriate standard for review of excessiveness of sentence). Proposition Five is denied.

OCCA Summ. Op. at 4.

Despite Petitioner's contentions, the mere length and consecutive (rather than concurrent) nature of Petitioner's sentences do not render them violative of the Eighth Amendment. The Court "afford[s] wide discretion to the state trial court's sentencing decision," *Dennis*, 222 F.3d at 1258, and "the length of sentence is almost entirely a matter of legislative prerogative," *Gaines v. Hess*, 662 F.2d 1364, 1370 (10th Cir. 1981) (citing *Rummel v. Estelle*, 455 U.S. 263 (1980)). *See also Saccato v. Wilson*, 510 F. App'x 693, 695-97 (10th Cir. 2013) (agreeing with district court that petitioner's argument of an excessive sentence was a state-law claim not cognizable in a federal habeas proceeding).

> The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, [560 U.S. 48, 59 (2010)] (citing *Weems v. United States*, 217 U.S. 349, 367 (1910)). However, the proportionality

requirement is "'narrow'" and merely "'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Id.* (citation omitted).

    To determine if a sentence is "grossly disproportionate," the Court must compare the gravity of the offense and the severity of the sentence. *Id.* "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir.2006) (citation omitted). On rare occasions, however, the crime and the sentence bear a gross disproportion to one another. *See United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir.2006). In these extraordinary circumstances, the sentence will be considered unconstitutional. *See* [*Andrade*, 538 U.S. at 77] ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

*Winchester v. Jones*, No. CIV-10-307-R, 2011 WL 2652760, at *16 (W.D. Okla. June 3, 2011) (R. & R.), *adopted*, 2011 WL 2636540 (W.D. Okla. July 6, 2011), *and appeal dismissed*, 455 F. App'x 811 (10th Cir. 2011).

Here, Petitioner did not challenge the sufficiency of the evidence to convict him on the misdemeanor count, and—as described above in Part III.B—there was ample evidence to convict Petitioner on the felony count. Further, Petitioner does not allege that the jury was not properly instructed that the term of imprisonment mandated by statute was six years to life for the felony offense and up to one year's imprisonment for the misdemeanor offense. *See* Okla. Stat. tit. 21, § 51.1(C); *id.* tit. 63, §§ 2-402(B)(1), 2-405(E)(1)-(3). Under Oklahoma law, separate sentences run consecutively unless the trial court expressly concludes otherwise. Okla. Stat. tit. 21, § 61.1. Petitioner has not shown that the OCCA's rejection of this claim was unreasonable or contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Goudeau*, 601 F. App'x at 708 ("There is no reason why a review of Goudeau's sentence should proceed beyond [the]

determination" that "'the sentence is within the limitation set by statute.'" (quoting *Dennis*, 222 F.3d at 1258)).

## RECOMMENDATION

As detailed above, it is recommended that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1) be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by February 19, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 29th day of January, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE